UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. SERRATORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 05 C 3524 |
| | ) |
| HARRAH'S OPERATING COMPANY | ) Judge George M. Marovich |
| d/b/a HARRAH'S JOLIET CASINO, and | ) |
| HARRAH'S ILLINOIS CORPORATION | ) |
| d/b/a HARRAH'S JOLIET CASINO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael J. Serratore ("Serratore") filed a three-count amended complaint against defendants (1) Harrah's Operating Company d/b/a Harrah's Joliet Casino and (2) Harrah's Illinois Corporation d/b/a Harrah's Joliet Casino ("Harrah's"). In his amended complaint, Serratore asserts that defendants discriminated against him on the basis of his sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Equal Pay Act and the Illinois Minimum Wage Act. Defendant Harrah's Illinois Corporation has moved for summary judgment.[1] Harrah's has also moved to strike plaintiff's response to defendant's statement of facts. For the reasons set forth below, the Court grants in part and denies in part the motion for summary judgment. The Court grants in part and denies in part the motion to strike.

---

[1]The other defendant, Harrah's Operating Company d/b/a Harrah's Joliet Casino ("Harrah's Operating") was first named as a defendant in plaintiff's amended complaint, which was filed on June 27, 2005. There is no evidence in the record that Harrah's Operating has ever been served. Harrah's Operating has never filed an answer or appearance in this case. The parties, in their briefs and in their initial status report, have spoken of just one defendant, Harrah's Illinois Corporation. Because there is no evidence that defendant Harrah's Operating was served within 120 days after plaintiff filed his amended complaint, the Court dismisses without prejudice all of plaintiff's claims against Harrah's Operating. *See* Fed.R.Civ.P. 4(m).

## I. Background

### a. Motion to strike

Defendant has moved to strike portions of plaintiff's response to defendant's statement of facts. In addition, defendant argues that some of the affidavits put forth by plaintiff contain inadmissible hearsay and lack foundation.

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). It is not enough at the summary judgment stage for either party to *say* a fact is disputed. The Court considers a fact disputed *only* if both parties put forth admissible evidence of his or its version of the fact. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. The Court enforces Local Rule 56.1 with respect to both parties regardless of whether either party moves to strike non-complying portions, because the purpose of the rule is to make *the Court's* job manageable, not to give litigants additional ammunition to use against one another.

Based on Local Rule 56.1, defendant moves to strike portions of plaintiff's response to defendant's statement of material facts. This is unnecessary. As the Court has already

explained, it does not consider facts that are not supported by admissible evidence. The Court need not take the time to strike that which it can simply ignore. The Court will not strike plaintiff's pleading.

Next, defendant objects to certain statements in declarations submitted by plaintiff. The Federal Rules of Evidence require foundation for testimony. Rule 602 of the Federal Rules of Evidence provides that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *See* Fed. R. Evid. 602. Thus, in an affidavit, a statement that a witness knows something, without statements about *how* the witness knows that something, is not admissible. *See Ward v. First Federal Savings Bank*, 173 F.3d 611, 618 (7th Cir. 1999); *Drake v. 3M*, 134 F.3d 878, 887 (7th Cir. 1998). For example, in Brian Meehan's ("Meehan") declaration, he states that he "was aware that people in the HR department and directors and managers around the Joliet facility were interviewed." Nowhere in the declaration does Meehan state how he knows this. The Court has ignored this and all other statements that lacked foundation.

Finally, defendant objects that certain statements in declarations submitted by plaintiff contain inadmissible hearsay. The Court notes (as plaintiff points out) that admissions of party-opponents are not hearsay. *See* Fed. R. Evid. 801(2). Thus, statements by Harrah's employees that were made with respect to matters in the course of their employment and during the duration of their employment are not hearsay. *Id.* Accordingly, declarations by witnesses who heard Batenic's statements about hiring at Harrah's are admissible. Statements on matters outside the scope of employment are hearsay. The Court will ignore any hearsay contained within the declarations submitted by plaintiff.

Defendant's motion to strike is granted in part and denied in part.

B. **Facts relevant to the motion**

Unless otherwise noted, the following facts are undisputed.

*Harrah's human resources department*

Defendant Harrah's Joliet Casino is a state-licensed gaming facility with about 1200 employees. Plaintiff Serratore was among them. From November 2000 until September 4, 2004 Serratore worked for Harrah's in the human resources department.

At the Joliet Casino, human resources was led by a Vice President of Human Resources, who was responsible for overseeing all human resources functions at the property. Reporting to the Vice President of Human Resources was, among others, a Human Resources Manager for Employee Relations (the "Human Resources Manager").[2] The Human Resources Manager was responsible for servicing the various client departments within the Joliet Casino. In turn, two Senior Employee Relations Consultants reported to the Human Resources Manager. Generally, each Senior Employee Relations Consultant was responsible for half of the client departments. In addition, the human resources department employed about eight or nine other individuals.

Harrah's has written guidelines for employee compensation. Each position at Harrah's was assigned a salary grade, which determines the salary range for that position. For example, the salary range for the Senior Human Resources Consultant position, a grade 16 position, was $31,065 to $64,529. Generally, Harrah's paid employees a salary within the designated salary range. When determining a salary for a new hire, Harrah's considered the job requirements, market salaries, the candidate's education and experience and the candidate's salary history. Casino-specific industry experience was not a factor in determining salaries. A bilingual candidate could be offered a higher salary within the salary range.

---

[2]The parties sometimes refer to this position as the Employee Relations Manager, but it is clear that the references are to the same position. To avoid confusion, the Court refers to the position as Human Resources Manager.

At various times during the relevant time period, the positions in the human resources department were held by different individuals. Karen Batenic ("Batenic") became the Vice President of Human Resources in May 2003. Yolanda Wurster ("Wurster") was an Employee Relations Consultant from 1998 or 1999 until about 2002. In late 2002, Harrah's promoted Wurster to the position of Human Resources Manager.

### *Serratore commences his employment with Harrah's*

Before joining Harrah's, plaintiff obtained a B.S. in Business Management from Purdue University. From August 1999 to August 2000, Serratore worked in an entry-level position as an employment analyst as U.S. Steel, where he was paid an annual salary of $24,000.

Harrah's hired Serratore about ten months after he left U.S. Steel. Effective November 2000, Harrah's hired Serratore as a Human Resources Assistant (salary grade 14) and paid him a starting annual salary of $34,000. Initially, Serratore worked at the Joliet Casino. In June 2001, plaintiff transferred to the Harrah's East Chicago Casino, where he continued to work in human resources for the same salary.

### *Plaintiff's promotion to Senior Employee Relations Consultant*

Plaintiff returned to the Joliet Casino in late 2002 when Wurster was promoted to Human Resources Manager. Her promotion left a vacancy in a Senior Employee Relations Consultant position (salary grade 16), and Wurster phoned plaintiff to see if he was interested in the position. He was. Wurster and Laura Ciancaglini (who was the recruitment manager at the time) interviewed plaintiff. During the interviews, Serratore stated that he wanted a salary in the low $40,000 range. Wurster, Cianciaglini and Michael St. Pierre (who was the General Manager of the Joliet Casino at the time) decided to offer Serratore the position at a salary of $42,000. Serratore accepted and, in September 2002, started back at the Joliet Casino as one of the two Senior Employee Relations Consultants. His annual salary increased to $46,000 in March 2003

and to $47,700 in September 2003. For the year 2003, Wurster rated Serratore's performance as "highly successful."

The other Senior Employee Relations Consultant position was vacant by October 2003. Stephanie Butler ("Butler"), among others, applied for the position. As of October 2003, Butler had eight years of experience in human resources at Keane Consulting Group, Field Marketing, Chicago Municipal Employees Credit Union and Spiegel, Inc. In addition, she had worked for two years at Chicago Cares, where she handled some human resources duties. Butler's educational background includes a B.A. in English from Tuskegee University and a Master of Science degree in Human Resources Management and Development from National-Louis University. Butler informed Harrah's that she wanted a salary of at least $57,000 because that was what she earned at her current job. St. Pierre and Batenic decided to offer her $53,000 based on the length (eight years) and breadth of her human resources experience, her Master's degree and her salary in her previous position. Butler accepted the position as a Senior Employee Relations Consultant and started in October 2003.

Thus, by October 2003, both Serratore and Butler were Senior Employee Relations Consultants reporting to Wurster. The two worked for different client departments, but their titles and job descriptions were the same. Their duties and responsibilities were nearly identical.

Wurster counseled Butler on a few occasions when Butler first started. Wurster counseled Butler for making personal telephone calls, for missing a meeting and a buzz session and for taking food from the food and beverage manager without paying for it. Serratore was never disciplined.

The human resources group gathered regularly for meetings called buzz sessions. At several buzz sessions, Batenic made comments that made Serratore believe she favored women. In or about July 2003, Batenic pointed to a group of photographs of Harrah's executives and

-6-

stated that she was "going to make sure there are all women on that board." At a December 2003 buzz session, after a woman was hired as a director, Batenic pumped her fist and said, "I am on my way–I have another woman for the board of directors." At a buzz session in March 2004, Batenic stated that she wanted an Asian woman for an information technology position. At a May 2004 meeting, Batenic said to a male employee, "You just don't listen. It must be a guy thing."

### *The Human Resources Manager vacancy*

In March 2004, the Human Resources Manager position became available when Wurster left Harrah's. Wurster told Serratore he should apply. At a staff meeting, Batenic handed both plaintiff and Butler the job description for the position and told them to apply if they were interested.

Serratore applied for the Human Resources Manager position, and Batenic interviewed him. Batenic felt that Serratore was not enthusiastic in his interview, partly because he had given "yes" and "no" answers to her questions. For her part, Batenic yawned during Serratore's interview.

Batenic discussed the vacant Human Resources Manager position with Joseph Domenico ("Domenico"), who was, at the time, the General Manager of the Joliet Casino. Batenic and Domenico discussed various internal candidates, including Serratore. Domenico–who had observed Serratore's performance while they were both employed at Harrah's East Chicago–told Batenic that he felt Serratore lacked initiative. Batenic interviewed a few more internal and external candidates, including Emilia Elizondo ("Elizondo"), and consulted Domenico again. Domenico informed Batenic that he thought it was in Harrah's best interest to promote from within if they had a qualified candidate. Domenico suggested Stephanie Butler.

Batenic spoke to Butler and suggested that she apply for the Human Resources Manager position. At first, Butler was reluctant to apply for the position because she knew Serratore was applying and she did not want to cause dissention in the department. She even told Batenic that she thought Serratore would be a better choice. Batenic told Butler that Serratore was no longer in contention for the position and that she was hoping to hire someone with Butler's experience and personality for the position. Butler applied and was selected for the position. Batenic selected Butler due to, among other things, Butler's experience, Butler's communication skills and Domenico's preference for an internal candidate. Butler's promotion was effective May 6, 2004.

Among the external candidates who were not selected for the Human Resources Manager position was Emilia Elizondo ("Elizondo"). Elizondo has a B.S. degree and is bilingual. When she applied in the spring of 2004, she had eight years of human resources experience at, among others, Hilton and Amcor. At Amcor, Elizondo was Human Resources Manager and earned an annual salary of at least $60,000.

Once Butler was promoted to Human Resources Manager, Harrah's had a vacancy at the Senior Employee Relations Consultant position. Batenic offered Elizondo the position and offered her an annual salary in the upper $40,000 range. In response, Elizondo demanded an annual salary in the upper $50,000 range because the offered salary would have amounted to a significant pay cut. Batenic and Domenico decided–based on Elizondo's prior salary, her human resources experience and her ability to speak Spanish–to offer Elizondo an annual salary of $53,000 (plus a $1,000 signing bonus), which she accepted. She started as a Senior Employee Relations Consultant on May 18, 2004.

*Serratore's departure from Harrah's*

In August 2004, Wurster contacted Serratore and invited him to apply for a position with her employer, Floor Covering Associates. On September 4, 2004, Serratore resigned from Harrah's. He started with Floor Covering Associates shortly thereafter.

Serratore filed suit in this Court, and defendant has moved for summary judgment.

## II. Summary judgment standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

### A. Serratore's Equal Pay Act claim

The Equal Pay Act of 1963 prohibits employers from discriminating on the basis of sex:

> by paying wages to employees . . . at a rate less than the rate [paid] to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (1) a seniority system; (ii) a merit system; (iii) a system which measures earnings by

>quantity or quality of production; or (iv) a differential based on any factor other than sex.

29 U.S.C. § 206(d). The Seventh Circuit has concluded–on several occasions–that "prior wages are a 'factor other than sex'" such that an employer's decision to pay an employer a salary because of his or her salary at his or her previous job is not unlawful under the Equal Pay Act. *Wernsing v. Illinois Dep't. of Hum. Serv.*, 427 F.3d 466, 468 (7th Cir. 2005) (collecting cases).

In this case, the parties put forth undisputed evidence that (at different times) Serratore, Butler and Elizondo each held the Senior Human Resources Consultant job and performed nearly identical duties. Serratore was initially paid an annual salary of $42,000, while two women–Butler and Elizondo–were initially paid annual salaries of $53,000. Serratore–who had previously earned annual salaries of $34,000 at Harrah's and $24,000 at his previous employer–asked for a salary in the low $40,000 range and was granted a starting salary of $42,000. By the time Butler was hired into the position, Serratore was making $47,700 for the position. Butler and Elizondo, both of whom were women with more than eight years of human resources experience, each asked for annual salaries in the high $50,000 range because each was making at least that much at her previous position. Harrah's offered each (at different times) and annual salary of $53,000 based on her prior experience and the fact that she had made more at her previous position. Each took a pay cut to work for Harrah's. The undisputed evidence is that the reasons Harrah's paid Butler and Elizondo more than Serratore for the same job are that the women had more experience, had made more money at their previous jobs and had asked for more money in their negotiations. These are "factors other than sex" within the meaning of the Equal Pay Act.

Accordingly, Harrah's is entitled to judgment as a matter of law on plaintiff's Equal Pay Act claim, and the Court hereby grants Harrah's summary judgment on that claim.

**B.     Serratore's Title VII claim**

Serratore asserts that Harrah's violated Title VII by discriminating against him on the basis of his sex when it promoted Stephanie Butler instead of him for the Human Resources Manager position.

Pursuant to Title VII of the Civil Rights Act of 1964, it "shall be an unlawful employment practice for an employer–(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion sex, or national origin." *See* 42 U.S.C. § 2000e-2(a).  A plaintiff may establish discrimination in violation of Title VII either by putting forth direct evidence of discrimination or by following the indirect method under *McDonnell Douglas Corp. v. Green.*, 411 U.S. 792, 802 (1973).

In this case, Serratore argues that he has put forth direct evidence of discrimination, namely Batenic's comments about women.  A statement can be "direct evidence of discriminatory intent where the statement was made around the time of *and* in reference to the adverse employment action." *Olson v. Northern FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004) (emphasis added) (citing *Hunt v. City of Markham*, 219 F.3d 649, 652 (7th Cir. 2000)).  In *Olson*, a decision-maker's remark that the plaintiff was undesirable in the business world due to his age was not direct evidence that the plaintiff was discharged due to his age.  Such a comment is not direct evidence of discrimination because it is not "an admission by the decision-maker that his actions were based upon the prohibited animus." *Olson*, 387 F.3d at 635 (citing *Cerutti*

*v. BASF*, 349 F.3d 1055, 1061 (7th Cir. 2003)). In this case, plaintiff put forth evidence that the decision-maker, Batenic, made several comments that suggested a general preference for hiring women. In or about July 2003, Batenic pointed to a group of photographs of Harrah's executives and stated that she was "going to make sure there are all women on that board." At a December 2003 buzz session, after a woman was hired as a director, Batenic pumped her fist and said, "I am on my way–I have another woman for the board of directors." At a buzz session in March 2004, Batenic stated that she wanted an Asian woman for an information technology position. At a May 2004 meeting, Batenic said to an employee, "You just don't listen. It must be a guy thing." None of these comments, however, is related to the decision to select Butler over Serratore for the Human Resources Manager position. Accordingly, the evidence is not direct evidence of discrimination, and the Court will consider plaintiff's claim under the indirect method.

Serratore is a white male alleging sex discrimination. The Seventh Circuit recognizes that "discrimination against white men is a less common phenomenon than discrimination against minorities. *Phelan v. City of Chi.*, 347 F.3d 679, 685 (7th Cir. 2003). Thus, a white male must "show something more than the fact that he is gendered" to take advantage of the indirect method. *Gore v. Indiana Univ.*, 416 F.3d 590, 592 (7th Cir. 2005). Instead of the usual first element of a *prima facie* case (membership in a protected class), Serratore must put forth evidence of "'background circumstances' that demonstrate that a particular employer has 'reason or inclination to discriminate invidiously against [men].'" *Phelan v. City of Chi.*, 347 F.3d 679, 684 (7th Cir. 2003) (quoting *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 457 (7th Cir. 1999)). In addition, Serratore must also show the usual elements of a *prima facie* case of

discrimination, including: "2) [he] was qualified for the position sought; 3) [he] was rejected for the position; and 4) the employee promoted was . . . not better qualified than [he]." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006). If the plaintiff makes out a *prima facie* case of discrimination, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision." *Rudin v. Lincoln Land Comm. College*, 420 F.3d 712, 724 (7th Cir. 2005). "If the employer does articulate such a reason, then 'the plaintiff must show by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination.'" *Rudin*, 420 F.3d at 724. "To do this, the employee must establish that the explanation is a lie, which permits a jury to infer that the tale has been concocted to conceal an unlawful truth. It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates federal law. Poor personnel management receives its comeuppance in the market rather than the courts." *Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006) (internal citations omitted).

*Prima facie case*

In this case, Serratore easily makes out the third element of the *prima facie* case because it is undisputed that Serratore was rejected for the Human Resources Manager position. The Court will assume, without deciding, that Serratore was qualified for the position. The Court concludes that Serratore has put forth enough evidence to show the first element of the *prima facie* case, because he has put forth background evidence suggesting that Batenic had some inclination toward hiring women. It is undisputed that Batenic made statements that she wanted more women on the Directors' wall, that she was pleased when another woman was hired for an

executive position and that she wanted an Asian female for a particular position. This is enough for summary judgment purposes.

Still, Serratore cannot make out a *prima facie* case of discrimination because he fails to put forth evidence of the fourth element: that Butler was not better qualified than Serratore. No reasonable juror could conclude that Serratore was as or better qualified than Butler. As of May 2004 (when Butler was promoted to the Human Resources Manager position), Serratore had a B.S. degree and 4.5 years of experience in human resources. Butler, however, had earned a Master's Degree in Human Resources Management and Development. In addition, Butler, with more than 8.5 years of human resources experience, had about twice as much experience as Serratore. No reasonable juror could conclude that Butler was not more qualified than Serratore, and Serratore cannot make out a *prima facie* case of sex discrimination under Title VII.

Defendant is entitled to judgment as a matter of law, and the Court hereby grants defendant summary judgment on plaintiff's Title VII claim.

### C. Serratore's state law claim

Serratore argues that Harrah's has waived its argument that it is entitled to summary judgment on Serratore's state law claim for unequal pay under the Illinois Minimum Wage Act. The Court agrees. In its opening brief, the defendant's only reference to this claim is in a footnote, where it did not even bother citing cases establishing that Illinois courts follow the Equal Pay Act in interpreting the Illinois Minimum Wage Act. It is too late to make these arguments in the reply brief because that would be unfair to the plaintiff.

In any case, the Court's jurisdiction over the state claim is supplemental. Per the usual practice, the Court exercises its discretion to dismiss the state claim without prejudice because it

has disposed of the only claims over which it had subject matter jurisdiction. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.").

## IV. Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendant's motion to strike. The Court grants in part and denies in part defendant's motion for summary judgment. Defendant is granted summary judgment on plaintiff's federal claims under Title VII and the Equal Pay Act. The Court dismisses without prejudice plaintiff's state law claim under the Illinois Minimum Wage Act.

ENTER:

George M. Marovich
United States District Judge

DATED: January 19, 2007